We have Ryan Malter v. Amanda Vaninger, and we have Morgan Scroggins for the appellant, and we have Laura Wunder for the appellee. You may begin, Mr. Scroggins. Scroggins As the Court is aware, this is a case involving calculation of net income and calculation of net income for court purposes. It is no question, as the Court, the State, the judge in this case, and I have reviewed, Mr. Malter is a mess. He ran his company like a mess. He used personal accounts to pay for business expenses. He used business accounts to pay for personal expenses. In the year 2006, he had business totaling over $1.1 million. According to his book work, he took in about $870,000. He could not account for where the money went. He could not account for what his income was. There were two separate proceedings examining him about his business practices, examining his income, and examining the income of his company. At the end of that second hearing, and in January of 2008, the judge in this matter could not come up with his net income. At one point in his order, he states that he had draws in excess of $182,000, personal draws into his personal checking account. At another point, he said he could possibly use the $1.1 million in income to calculate for child support purposes. He found my client's testimony incredible, found it to be incredible that a person running a small business could have income in excess of $1 million and show a loss of $4,000. Now obviously, this order was entered prior to the collapse of the economy in the United States, whereby multi-billion dollar companies were asking the United States for handouts. My client was a mess, and I wanted to emphasize that to show one thing, and that is that you cannot punish somebody and make them pay child support for being a mess. There's also mention in the state's brief that he failed to pay child support in a timely manner. He was a poor businessman. He didn't take care of his responsibilities, but you cannot punish him for those things. I think the law is clear that if you cannot come up with… What is there in the record? You're using the word punish. What is there in the record that would show that the trial court punished him? Wasn't the trial court just out of this mess, as you describe it, trying to make a determination of what his actual income was for child support purposes? That's correct. The court was, but the tone of the order suggests that he is punishing him. In fact, at one point he says that the way he kept his business practices must be for some nefarious activity. He mentioned in his court order that my client was either hiding income for tax purposes or hiding income to keep from paying child support. Now, there's nothing in the evidence showing that his business practices changed once the petition for increase in child support was filed on April 28th of 2006. My client tried to show to the court what his income was. My client did produce records, both of his personal accounts and of his business accounts, produced records of his profit and loss statements. He was in this. But that also illustrates the fact that net income could not be determined in this case. After the court found that net income could not be determined, then the court proceeded to determine it for him. The court said, well, net income cannot be determined, therefore you earn $100,000 a year. The court did not determine what could be deducted and what could not be deducted. The court was simply left with some big numbers, $1.1 million in one case and $182,000 in another case. And based upon those large figures, the court determined that, well, maybe it should be a little less. Now, the court also, I believe, Who had the burden of proof with regard to the applicable exemptions? Did your client? I believe my client did, yes. Now, in making his determination, I believe that the court kind of mixed up the statute and the case law in this matter. Because basically, he referred to Takata, In re, the marriage of Takata. In In re, the marriage of Takata, the court determined that they could not determine the net income of the obligor for child support. And therefore, based upon the reasonable needs of the children, he determined that child support should be set at $125.96 per week. He could not determine the net income of the gentleman in that case. There are a number of cases cited by the appellant and the appellee in this matter. All would show that determining child support can be quite a mess. Most of the cases examine the totality of the circumstances. In re, the court considers the wife's income in determining child support. And in determining child support in that case, the court was mindful to view all of the circumstances. The statute in 505A2 states that relevant factors are the financial resources and needs of the child, the financial resources and needs of the custodial parent, the standard of living the child would have enjoyed had the marriage not been dissolved, the physical and emotional condition of the child and his educational needs, and the financial resources and needs of a non-custodial parent. A through E equals five. There are five factors to be considered. In this case, all the court simply did was try to determine what the net income of the father was, and then set child support therefrom. Well, it is clear through the record that the court could not do that. And therefore, those five relevant factors also should be considered. Now, also, in 505A5, it states if the net income cannot be determined because of default or for any other reason, the court shall order support in an amount considered reasonable in the particular case. In this case, the court should have applied that standard in trying to determine what child support should be. What the court did was, is try to determine what the reasonable net income should be. He assumed that my client earned in excess of $100,000 and therefore set $20,000 per year as child support. And as stated in our reply brief, we state that that is an increase in excess of 400%. My client was paying $89 per week prior to the issuance of the court order in January of 2008, and an increase to somewhat less than $2,000 per month. Again, an increase in excess of 400%. And I can go down the list of cases that were cited both by Mr. Malter and the state. Just to make a point here, you're not arguing that the amount of child support that was arrived at was unreasonable. You're arguing that the process was flawed. I'm arguing that the process was flawed, and I'm also arguing that I don't know whether that amount was reasonable. In order to arrive at what is reasonable, the court should have, especially in this case when they could not determine what the net income was, should have examined the totality of his business, which they did, some of them. The needs of the child. Did anybody offer evidence of all that? Nobody offered evidence of the needs of the child, nor did they offer evidence of the income of the parent. So if that evidence wasn't offered, how is the trial court supposed to examine that? Well, it was the state's case to present. The state filed their petition. Okay, but if your client is wanting the trial court to use that process of examination, why didn't your client put in evidence that the child didn't need that much money and so forth? In answer to that, I don't know. I was not there at the trial level. But when you go through the list of cases, what becomes clear, and the case law is a mishmash of certain factors that were used to determine child support. In Nail, as cited by the state, the petitioner in that case proved the expenses of the child. In Keyon C, where the mother was awarded $8,500 a month in child support, the respondent in that case was a professional basketball player, they lowered it below 20% of the guidance. If it was 20%, it could have been in excess of $13,000 a month. But they examined the lifestyle of the child, number one, and what the lifestyle of the child would have been had the parties not split. And they also examined the income of the mother. The mother was earning less than $800 per month. In Koronis, where they could not determine what the respondent's income was, they examined past earnings. In Garrick, both parties' incomes were examined. In Bush, both parties' incomes were examined. And in that case, they determined that an amount in the award that the trial court awarded was a windfall. In Wessel, Wessel stands for the proposition that you should set what is reasonable for the particular case. In Severino, they examined the costs and expenses of the child. In Rogliano, again, they considered the wife's income and they considered child support should be set in view of all of the circumstances. And in this case, that simply did not happen. The court simply examined what the net income of the father was, could not determine that, made an arbitrary finding that it was $100,000, and set child support at 20% of an arbitrary finding. The focus of this case was on the fact that no real net income could be found in this case. So other factors could have and should have been considered. Thank you. Thank you, Mr. Scott. We still have the opportunity for rebuttal. Ms. Wunder? Is it Wunder or Wunder? Ms. Wunder. Just one second. Thank you. On behalf of the Department of Health Care and Family Services, to begin, I think it's important to keep in mind the standard of review here. And this is a case where the appellant can't prevail absent showing an abuse of discretion. It's a very deferential review. The first district in a case called San Portello that's in the brief referred to it as the most deferential review next to no review. And it doesn't look at could the court have considered other factors, was there a better approach, might this court have done something differently. It's really looking at did something very improper happen, something that would be fair to say no reasonable person could agree with how the circuit court handled it. And it suggests that this is a record that supports the conclusion that the court acted very reasonably to reach a decision based on the evidence before it. And doesn't it all show an abuse of discretion. The claims that the appellant's raising now, this idea that while the circuit court on its own initiative without the appellant offering this other evidence that he thinks the court should have considered, should have just looked at that on his own initiative and that's one reason for asserting an abuse of discretion. There's also a claim that there's a problem in the methodology the court used. I'd suggest that both of those claims are forfeited because before the circuit court the appellant didn't say to the judge well you should use this other methodology. I'd like to present other evidence you should consider. And that's despite moving for reconsideration and actually asking for and receiving leave from the court to put on additional evidence. And yet still not raising these issues. And so under those circumstances I think that finding forfeiture is warranted. But even apart from the forfeiture, turning to the merits, it's very clear that this is a case where if the appellant is suggesting that there were other factors that the circuit court should have considered, then that might be a reason for a lower award than it was up to the appellant to make that claim in the circuit court and to seek to provide evidence of the child's needs. I think that goes to the forfeiture but it also goes to the reasonableness of the court's decision in this case. And the appellant suggesting well that really wasn't my burden and that's not convincing. That's not what the case law is. The evidence that the appellant is suggesting the court should consider is really in the nature of an affirmative defense. The appellant cites the five factors that fall under considering whether a deviation from the guidelines is appropriate. And the case law is very clear that the proponent of a deviation from the guidelines has the burden of supplying the evidence. If he felt that a lower award was in order, then it was up to the appellant to come forward with some evidence and say here's why. And that didn't happen here. So the view that the appellant is actually seeking to be rewarded for obfuscating his income is because income was more difficult to determine in this case than it might have been in another case. He's actually asking to have these evidentiary burdens that he would plainly have in a straightforward guidelines case taken away from him. And that shouldn't be the case here. This was a burden that was on the appellant that he didn't satisfy. He's also asking, suggesting that the court's methodology was flawed and that's not the case. In this case, the court applied a very reasonable approach. I think a recent first district decision in a case called San Fratello is instructive because the first district in that case found no abusive discretion. And the circuit court's method was similar to the circuit court's method in this case. Again, the court there found that testimony from a father about net income was not credible. And so the court looked at the evidence that was before it and determined that a reasonable amount to impute to the father for a net income figure was about $130,000. And then the court from there determines a reasonable amount of support in effectively what would have been the guideline amount for three children. So, again, a very similar methodology. The first district found no abusive discretion. And it noted, and I think this resonates here, the father having been less than candid about his income is in no position to claim that the judge went outside her discretion in setting the child support obligation. And when we look at what the court did here, the court acted reasonably. It didn't act arbitrarily. There was some characterization of this being an attempt to punish the appellant for making a mess of his records. Or that this $100,000 figure is completely arbitrary. The description is as if the court said, well, I can't determine net income. I have no idea, so I pick $100,000. But I'd say that's a mischaracterization because what the court did here was to look at all of the evidence before it and reach the conclusion that based on the evidence I have here, it's reasonable to attribute at least that much income to the appellant. And that was based on the magnitude of the business operations. But it wasn't credible that someone who was drawing in close to $8,500, excuse me, $850,000 a year was also claiming that they simply had no income. And the evidence showed that there were substantial draws of money from the business account to the appellant's personal account that he could not, never credibly accounted for. There was evidence that the appellant was living a very comfortable lifestyle, including evidence suggesting that he had purchased a $20,000 boat and was trying to conceal that from the court. So the court made this reasonable determination based on the evidence that was before it. And then what did the court do? After assessing that, the court went on to consider a guideline amount, which of course is a legislative tool where the legislature has made an assessment that the guideline amounts are ordinarily going to be appropriate. So it was very reasonable for the court to take into account the guidelines. So the court's methodology was well within its discretion and appropriate to the evidence that was before the court. If there are any other questions, I'll conclude. Thank you, Ms. Wunder. Ms. Wunder and Mr. Scroggins, you have the opportunity for rebuttal. On April 28, 2006, the state filed a petition to modify the increased child support. In their petition, in paragraph 4, they state the financial needs of the respondent have increased since the entry of the order, which enables him or her to contribute additional sums for the support of the children. In paragraph 5, it states the financial needs of the children, or child in this case, have increased since the entry of the order, and the petitioner requires an increased contribution from the respondent to meet those needs. The state is the petitioner in this matter. It is the state's burden of proof to prove its case. In paragraph 5, the state sought to prove the financial needs of the child have increased. The state did not do that. The case law is clear that when you cannot formulate the net income of an obligor, you must look at the totality of the circumstance, look at the needs of the children, look at the various incomes of both parties, and then make a reasonable award of child support under that particular case. In this case, that did not happen. In this case, the trial court simply looked at my client's income and tried to determine what his net income was, could not determine what his net income was, and then picked a figure of $100,000. This is not a deviation of guidelines case. This is a case where you cannot determine net income. There were cases cited by the state that were deviation of guideline cases, in particular, in Raytheon C. Again, this is not a guideline case. And I am not stating that the child support that was set is unreasonable, period. I'm saying that we cannot determine what is reasonable in this case because we did not examine the totality of the circumstances. Once the state or once the court determined that they could not determine my client's net income, they should have looked at the totality of the circumstances. Thank you. Thank you both for your briefs and arguments. We'll take the matter under advisement and the ruling in due course.